IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| INSIGHT HOLDING GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09cv1330 |
| | ) | |
| SITNASUAK NATIVE CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The threshold issue in this removed diversity breach of contract case is the question, unresolved in this circuit, whether defendants may validly consent to removal where, as here, those defendants are subject to forum selection clauses requiring that disputes be adjudicated in state court. Put differently, the question is whether removal, which requires the consent of all defendants, is valid where some consenting defendants were contractually bound to litigate the dispute in state court.

The matter has been fully briefed and argued, and is now ripe for disposition. For the reasons stated herein, removal of this case was defective and the matter must therefore be remanded to Fairfax County Circuit Court. As a consequence, defendants' motion to transfer this case to the District Court for the District of Columbia is rendered moot and is therefore neither reached nor decided.

### I.

Plaintiff Insight Holding Group, LLC ("IHG") is a management consulting company incorporated in the State of Delaware with a principal place of business in Maryland. Defendants

are (i) Sitnasuak Native Corporation ("SNC"), which is organized under the laws of Alaska with a principal place of business in Alaska, and (ii) SNC Telecommunications, LLC ("SNCT") and (iii) API, Inc. ("API"), both of which are wholly-owned SNC subsidiaries incorporated in Alaska with principal places of business in the District of Columbia.

The parties' business relationships date back to 2002, when IHG's predecessor company, Insight Consulting Group, LLC ("ICG") entered into a consulting agreement (the "2002 Agreement") with SNCT.[1] The 2002 Agreement contained a choice of law clause applying Virginia law to matters involving contract construction, interpretation, and performance. There was no forum selection clause. In 2006, the same two parties entered into an additional agreement (the "2006 Agreement") whereby ICG agreed to perform additional management consulting services for SNCT. Although the 2006 Agreement contained neither a choice of law clause nor a forum selection clause, it incorporated the terms of the 2002 Agreement, which did contain a Virginia choice of law clause. By an assignment agreement between SNC, SNCT, ICG, and IHG dated January 4, 2007 (the "Assignment Agreement"), ICG assigned all of its rights and responsibilities under the 2002 Agreement and 2006 Agreement to IHG, and IHG assumed all of ICG's "obligations, covenants, representations, conditions, and promises" under those agreements. The Assignment Agreement contains no choice of law or forum selection clause.

In October 2008, IHG and "SNC, LLC"[2] entered into a new agreement (the "2008

---

[1] According to plaintiff, ICG was based in Reston, Virginia.

[2] Plaintiff contends that the 2008 Agreement was between IHG and SNC. Defendants, noting that SNC is not a limited liability corporation, contends that the agreement was between

Agreement") whereby IHG agreed to provide consulting services to SNC and "other SNC companies" including, specifically, SNCT. By its terms, the 2008 Agreement was to remain in effect until 2013. Although terminable earlier, the early termination provision calls for SNC to pay to IHG $250,000 plus 2.0 percent of SNC's sales revenues (including the revenues of its subsidiary government contractor companies) through 2013 in the event SNC were to terminate the 2008 Agreement before the end of 2013. If, on the other hand, IHG were to terminate the 2008 Agreement prior to 2013, SNC would still have to pay 1.75 percent (instead of 2.0 percent) of its sales revenue through 2013 to IHG, but not the $250,000. Thus, the 2008 Agreement provided IHG with only a modest incentive to refrain from exercising the 2008 Agreement's early termination provision since, if it exercised the provision, it would nonetheless receive 1.75 percent of the 2.0 percent revenue-based portion of the termination fee. Additionally, although the 2008 Agreement itself contains no choice of law or forum selection clause, paragraph 7 of that agreement incorporates the 2002 Agreement's provisions, which, as noted, include a Virginia choice of law clause.

Thereafter, in April 2009, IHG entered into separate "Incentive Retention Agreements" ("IRAs") with SNCT and API. These one-page agreements provided IHG with an added incentive to refrain from early termination by calling for SNCT and API to pay an additional 2.0% of their revenue through 2013 to IHG in the event SNC were to terminate the 2008

_____

IHG and SNCT, which is an LLC. This dispute is not material to the disposition of plaintiff's motion to remand.

Agreement before 2013.[3]  Importantly, each of the IRAs states as follows:

> 5. This agreement shall be construed and interpreted under the laws of the Commonwealth of Virginia, USA. Any legal proceeding between the parties will take place in the Fairfax Virginia State court.

IHG filed this lawsuit on October 7, 2009, in Fairfax County Circuit Court, alleging that SNC terminated the 2008 Agreement prior to its 2013 expiration and that IHG is therefore entitled to the termination fees owed by SNC pursuant to the 2008 Agreement and by SNCT and API pursuant to the two IRAs.  IHG also seeks declarations that defendants are liable under the 2008 Agreement and the IRAs.  SNCT and API were served on November 5, 2009, and SNC was served on November 17, 2009.  On November 30, 2009, defendants timely removed the case pursuant to 28 U.S.C. § 1446.[4]  IHG timely filed a motion to remand this case to the Fairfax

---

[3] The following table illustrates the early termination provisions of the agreements before and after the IRAs:

|  | Before IRAs | After IRAs |
|---|---|---|
| If SNC Terminates | SNC pays 2.0% of combined revenue of SNC, SNCT, and API plus $250,000 to IHG | SNC pays 2.0% of combined revenue of SNC, SNCT, and API plus $250,000 to IHG; SNCT and API each pay additional 2.0% of revenue to IHG |
| If IHG Terminates | SNC pays 1.75% of combined revenue of SNC, SNCT, and API to IHG | SNC pays 1.75% of combined revenue of SNC, SNCT, and API to IHG |

Accordingly, the IRAs provided IHG with a modest additional incentive not to terminate the 2008 Agreement early, because IHG would gain even more if SNC terminated it first.

[4] A notice of removal must ordinarily be filed "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b).  Defendants SNCT and API were served on November 5, 2009, and defendant SNC was served on November 17, 2009.  Thus, the parties do not dispute that

County Circuit Court on December 23, 2009.[5]

## II.

On a motion to remand, it is well settled that the burden is on the removing party to establish that the requirements of removal are met. *See In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).[6] And it is equally well settled that one of the requirements for valid removal is that *all* defendants must consent to remove the case from state court. *See Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900); *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006); *Perpetual Bldg. & Loan Ass'n v. Series Directors of Equitable Bldg. & Loan Ass'n*, 219 F.2d 1, 6 (4th Cir. 1954). Thus, if the parties seeking removal cannot show that all defendants validly consented to removal of the suit from state court, then the matter must be remanded.

There is no question that all defendants purported to consent to removal of this action from Fairfax County Circuit Court. Yet, that apparent consent is in tension with the IRAs—to which two of the three defendants are parties—that contain forum selection clauses plainly requiring that any dispute arising out of those Agreements be litigated in "the Fairfax County

---

notice of removal was timely filed on November 30, 2009.

[5] A motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).

[6] *See also* 7 Charles Alan Wright & Arthur R. Miller, et al., *Federal Practice & Procedure* § 3739 ("It is also well settled under the case law that the burden is on the party seeking to preserve the district court's jurisdiction, typically the defendant, to show that the requirements for removal have been met.").

State court."[7]  In other words, SNCT and API contend that they have validly consented to removing this action from Fairfax County Circuit Court notwithstanding that they are parties to contracts in which they unambiguously agree that any disputes would be litigated in that very court.  At issue, therefore, is whether these forum selection clauses, if valid and applicable to this dispute, constitute a waiver of SNCT's and API's removal rights and thus prevent them from validly consenting to removal of this case from the contractually "selected" forum.

## III.

### A.

Analysis properly begins with the choice of law issue, which is easily resolved here. Because this is a diversity action, the governing substantive law, including choice of law rules, is that of the forum state—in this case, Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  And it is well recognized that "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Colgan Air*, 507 F.3d at 275; *Tate v. Hain*, 25 S.E.2d 321, 325 (Va. 1943) (holding that the intent of the parties to choose governing law "'will always be given effect except under exceptional circumstances evincing a purpose in making the contract to commit a fraud on the law'") (quoting 11 Am. Jur. Conflict of Laws § 119).  No such circumstances exist here; thus, the law of Virginia governs matters involving the IRAs, including

---

[7] The Circuit Court of Fairfax County fits this definition, as it has exclusive jurisdiction over civil claims exceeding $15,000. *See* Va. Code §§ 16.1-77 (restricting jurisdiction of general district courts to claims under $15,000), 17.1-513 (establishing jurisdiction of circuit courts).

the enforceability of the forum selection clauses.

B.

Defendants first attack the validity of the IRAs—and, therefore, the forum selection clauses contained therein—on the ground that SNCT and API received no valid consideration in exchange for their promises in the IRAs. Specifically, defendants argue that because IHG had a preexisting duty to comply with the terms of the 2008 Agreement, there was no additional consideration given to SNCT and API for the early termination fees they promised to pay in the IRAs. In response, plaintiff provides the declaration of H. James Nunes, the President of IHG, who along with Robert Fagerstrom, SNC's President, signed the IRAs. Mr. Nunes, in his declaration, states that Mr. Fagerstrom believed "that it was absolutely critical that [IHG] stay involved with SNCT and API for the long-run." Supp. Decl. of H. James Nunes at ¶ 2. An e-mail message sent from Mr. Nunes to Mr. Fagerstrom reiterates that Mr. Nunes understood Mr. Fagerstrom to have these concerns, and Mr. Fagerstrom's response appears to confirm that the IRAs were designed to address these concerns by providing IHG with an additional incentive to refrain from exercising its early termination right.[8] On these uncontested facts, it is clear under Virginia law that the IRAs are supported by adequate consideration.

The Supreme Court of Virginia has elucidated the concept of consideration as follows:

> Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the

---

[8] Specifically, in the e-mail message, Mr. Nunes wrote that he is providing the incentive agreements "in response to your request to develop an additional incentive to keep IHG involved for the long-run." Pl.'s Reply Br. Ex. 1. In response, Mr. Fagerstrom wrote: "Thanks Jim and you should have received the faxed [sic] of the two page agreement already." *Id.*

-7-

promise is made. It matters not to what extent the promisor is benefitted or how little the promisee may give for the promise. A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.

*GSHH-Richmond, Inc. v. Imperial Assocs.*, 480 S.E.2d 482, 484 (Va. 1997) (quoting *Sager v. Basham*, 401 S.E.2d 676, 677 (Va. 1991)). This standard, applied here, points convincingly to the conclusion that defendants—who have the burden here[9]—have not shown that the IRAs were lacking in consideration. To the contrary, it seems clear that defendants sought these retention agreements precisely to provide IHG with an adequate incentive to refrain from exercising its right to terminate the 2008 Agreement prior to 2013. This additional encouragement was necessary because the 2008 Agreement provided that IHG would receive 1.75 percent of SNC's sales if IHG exercised the early termination provision, as opposed to the 2.0 percent plus $250,000 that IHG would receive if SNC terminated the 2008 Agreement early. Thus, the 2008 Agreement by itself made it quite plausible that IHG might find it more beneficial to terminate the 2008 Agreement rather than continue to perform until SNC's early termination or the end of 2013. By increasing the amount of IHG's recovery in the event that SNC—and not IHG—terminated the 2008 Agreement, the IRAs essentially helped motivate IHG to continue the 2008 Agreement until the 2013 expiration date, or until SNC chose to terminate it. This benefit conferred to defendants is plainly sufficient to constitute valid consideration under Virginia law.

---

[9] *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) ("[W]hen removal is challenged, the removing party bears the burden of demonstrating that removal jurisdiction is proper.").

C.

The analysis next turns to the validity of the forum selection clauses contained in the

IRAs. The Supreme Court of Virginia has held that under Virginia law such provisions are

*prima facie* valid and "should be enforced, unless the party challenging enforcement establishes

that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining

power." *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990). These

circumstances do no exist here.

Indeed, the choice of a Virginia forum is entirely fair and reasonable. SNC had an

extensive contractual relationship with IHG's Reston-based predecessor company, ICG, which

relationship is, in part, the subject matter of this lawsuit. Moreover, all of the contracts in issue

contained or incorporated Virginia choice of law clauses, which creates a nexus with the chosen

Virginia forum.[10] Finally, SNCT and API operate principally out of the District of Columbia,

which is within easy driving distance (less than twenty miles) of the Fairfax County

Courthouse.[11] Thus, it is neither unfair nor unreasonably inconvenient for this dispute to be

litigated in Fairfax County Circuit Court. *See Paul Bus. Sys.*, 397 S.E.2d at 808 (enforcing New

York forum selection clause even though (i) all material events occurred in Virginia, (ii) all

---

[10] *Cf. Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (holding that in *forum non conveniens* context, governing law is a factor to be considered in determining whether alternative forum is more convenient); *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (concluding that, in determining whether defendant had sufficient nexus to forum to create personal jurisdiction, "[a] choice of law clause is a significant factor . . . because the parties, by so choosing, invoke the benefits and protection of [the chosen state's] law").

[11] Defendants apparently agree that the District of Columbia would be a fair and reasonably convenient venue to try this case, as they have filed a motion to transfer this case to the U.S. District Court for the District of Columbia.

witnesses were located in Virginia and not subject to subpoena in New York, (iii) no equivalent cause of action existed in New York, and (iv) remaining defendant was not subject to personal jurisdiction in New York). Additionally, there is no allegation of fraud or unequal bargaining power. Thus, the forum selection clauses are valid and enforceable.

D.

The next question is whether the IRAs' forum selection clauses cover the alleged causes of action in this case so as to require that they be litigated in Fairfax County Circuit Court. To begin with, it is pellucidly clear that the subject matter of this litigation dispute falls squarely within the plain language of these forum selection clauses, which are phrased in broad and mandatory language: "*Any* legal proceeding between the parties *will* take place in the Fairfax Virginia State court." Compl. Exs. 4–5 ¶5 (emphases added). In *Paul Business Systems*, a similarly broad contractual clause was applied not to a contractual dispute to a tort suit related to the parties' business relationship. 397 S.E.2d at 808. Specifically, in *Paul Business Systems*, four of the six agreements between the plaintiff and defendant Canon U.S.A. contained the following provision:

> Dealer consents to the jurisdiction and venue of any local, state or federal court located within the State of New York upon service of process made in accordance with the statutes of New York and the United States, and further agrees that any and all causes of action hereunder by and between the parties hereto shall only have jurisdiction and venue in the local, state or federal courts in the State of New York.

*Id.* at 807.[12] The forum selection clauses in issue thus did not specifically address tort claims, but rather provided that "causes of action hereunder" must be brought in courts located in New York

---

[12] The other two agreements contained similar clauses. *Id.*

-10-

*Id.* The Supreme Court of Virginia nonetheless applied the forum selection clause to the defamation, tortious interference, and business conspiracy claims because those claims involved the parties' business relationship and "the business relationship finds its basis in the agreements" containing the forum selection provisions. *Id.* at 808. Given *Paul Business Systems*, it follows *a fortiori* that the contract disputes in this case fall well within the ambit of the IRAs' forum selection clauses. The claims in two of the four counts in this case arise directly from an alleged breach of the IRAs, specifically, SNCT's and API's alleged failure to pay the termination fees specified by the IRAs. In other words, the claims allege that defendants have breached the material terms of the IRAs. Thus, the forum selection clauses, by their terms, plainly apply to this action.

Nor is the result any different merely because this case also includes two additional claims against a defendant who is not a party to the agreements containing forum selection clauses. Indeed, in *Paul Business Systems*, the complaint named not just Canon U.S.A., the party to the forum selection provisions, but also a second corporate defendant and three individual defendants, none of whom were parties to any of the agreements containing the forum selection clauses. Yet, notwithstanding the existence of claims against parties not bound by the forum selection clauses, the Supreme Court of Virginia gave full effect to the clauses. 397 S.E.2d at 808. Thus, it again follows *a fortiori* from *Paul Business Systems* that this action falls squarely within the scope of the IRAs' forum selection clauses and that these clauses must be given full effect notwithstanding that one defendant is not a party to the IRAs. In other words, the parties to the IRAs—IHG, SNCT, and API—were contractually obligated to bring this suit only in

Fairfax County Circuit Court and Virginia law requires that this contractual obligation be given full effect.

E.

This does not end the analysis, as yet to be addressed is the novel, central question presented, namely whether the mandatory forum selection clauses also operate as a waiver of SNCT's and API's statutory removal right. While the Fourth Circuit has yet to address this question, the great weight of existing circuit authority sensibly holds that by agreeing to a mandatory forum selection clause, parties ordinarily also waive their § 1441 removal right.[13] In this respect, the Second Circuit held that a defendant waived his right to remove a state breach of contract action by agreeing to a mandatory forum selection clause requiring that no "action or proceeding shall be commenced" except in New York state court. *Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988). In so holding, the Second Circuit noted that such a mandatory forum selection provision "makes little sense unless it precludes removal" by the defendant, even if the language of the provision "may not literally preclude removal." *Id.* The Eleventh Circuit held more broadly, in *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 (11th Cir. 1999), that even a permissive forum selection clause—specifying that a lawsuit "may be brought" in a state court and "expressly waiving whatever rights" the parties

---

[13] *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 (11th Cir. 1999); *Milk 'N' More v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992); *Karl Koch Erecting Co. v. N.Y. Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988); *see also Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001) (affirming remand due to service of suit clause); *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1217 (3d Cir. 1991) (same). *But see Regis Assocs. v. Rank Hotels Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) (reversing remand because intent to waive removal right was not "clear and unequivocal").

may otherwise have to object to the choice of venue—precludes removal from state court. Additionally, the Tenth Circuit found that the defendant waived his removal right by agreeing to a provision that merely stated that "venue shall be proper under this agreement in Johnson County, Kansas." *Milk 'N' More v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).[14]

The rationale for finding waiver of removal rights in these circumstances is as compelling as it is apparent. Removal is a right that, like most statutory rights, can be waived. And unless waiver is found in mandatory forum selection clauses such as those in issue here, the clauses are rendered nugatory. This cannot be the parties' intent in agreeing to a mandatory forum selection clause.[15] To the contrary, it is clear that by selecting a state forum for litigating any contractual disputes, the parties intended to waive their right to remove the action from that forum. Thus, when a valid forum selection clause declares that any litigation between the parties "will take place" in a particular state court, the agreement must be understood to include waiver of the right to remove the action, or to consent to removal of the action, from the selected court.[16]

---

[14] The Sixth Circuit is the only Court of Appeals to require that a waiver of removal rights be "clear and unequivocal"; applying this standard, it held that a nonmandatory forum selection clause stating that "the parties hereby submit to the jurisdiction of the Michigan Courts" did not prevent defendant from removing the case to federal court. *Regis Assocs. v. Rank Hotels Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990). The permissive forum selection clause at issue in *Regis Associates* is quite clearly distinguishable from the mandatory one in issue here and, moreover, courts outside the Sixth Circuit have consistently rejected the "clear and unequivocal" standard. *See, e.g., Snapper*, 171 F.3d at 1261.

[15] *Cf. Pocahontas Min. Ltd. Liability Co. v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008) ("No word or phrase employed in a contract will be treated as meaningless if a reasonable meaning can be assigned to it, and there is a presumption that the contracting parties have not used words needlessly.") (citation omitted).

[16] Neither addressed nor decided here is whether a waiver of the removal right is effected by (i) agreeing to a permissive forum selection clause, (ii) agreeing to a clause declaring that any

It follows, then, that this entire case must be remanded to Fairfax County Circuit Court. Contrary to defendants' suggestion, doing so does not "require a defendant that was not a party to a forum selection clause to be bound by such clause." Def.'s Opp. Br. at 11. Remand is required not because SNC is somehow bound by a forum selection clause to which it did not agree. Rather, remand is necessary because the forum selection clause contractually prevents SNCT and API from validly consenting to removal of this case. Thus, because *all* defendants cannot consent to removal, the firmly established unanimity requirement for removal is not met.[17] Accordingly, the removal of this suit from Fairfax County Circuit Court was procedurally defective and remand of the entire case is therefore required.[18]

## IV.

In summary, the forum selection clauses contained in the IRAs are valid and enforceable under Virginia law. Moreover, those clauses apply to this suit, and they preclude SNCT and API from validly consenting to removal of this case from Fairfax County Circuit Court. Thus,

---

suit "shall be commenced" in a given court, but saying nothing of where it shall be litigated, or (ii) agreeing to a so-called "service of suit" clause. Those clauses present closer questions not in issue here.

[17] *See Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1049 (11th Cir. 2001) (affirming remand of entire suit because one of the twenty-three defendants waived removal right in forum selection clause and thus unanimity requirement was not met); *see also Chicago, Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245, 248 (1900) (applying unanimity requirement); *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006) (same); *Perpetual Bldg. & Loan Ass'n v. Series Directors of Equitable Bldg. & Loan Ass'n*, 219 F.2d 1, 6 (4th Cir. 1954) (same).

[18] This conclusion is further supported by the well established principle that removal jurisdiction be "strictly construe[d]" because it "raises significant federalism concerns." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

because SNCT's and API's consent to removal was invalid, the rule requiring unanimity among removing defendants is violated, and so the removal was defective. This case therefore must be remanded to Fairfax County Circuit Court. Accordingly, defendants' motion to transfer this case to the United States District Court for the District of Columbia should be denied as moot.

An appropriate Order will issue.

Alexandria, Virginia
February 12, 2010

T. S. Ellis, III
United States District Judge